# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>SYLVIA CLARA SIMONSEN<br><br>*Defendant(s)* | )<br>)<br>) Case No. 3:19-MJ-0007 · DMC<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   February 14, 2019 to May 1, 2019   in the county of   Shasta   in the
Eastern   District of   California   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1201 | Kidnapping |

This criminal complaint is based on these facts:

(see attached affidavit)

☒ Continued on the attached sheet.

*Complainant's signature*

Peter A. Jackson, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 3 2019

*Judge's signature*

City and state:   Redding, California

Dennis M. Cota, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
for the

Eastern District of California

United States of America
v.

SYLVIA CLARA SIMONSEN

Case No. 3:19-MJ-0005-DMC

*Defendant*

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* SYLVIA CLARA SIMONSEN,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☒ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 1201 - Kidnapping

Date: May 3 2019

*Issuing officer's signature*

City and state: Redding, California

Dennis M. Cota, United States Magistrate Judge
*Printed name and title*

### Return

| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____ |
|---|

Date: _____

*Arresting officer's signature*

_____, United States Magistrate Judge
*Printed name and title*

### AFFIDAVIT OF SPECIAL AGENT PETER A. JACKSON
### IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT
### FOR SYLVIA CLARA SIMONSEN

I, Special Agent Peter A. Jackson, United States Department of Justice, Federal Bureau of Investigation, being first duly sworn, hereby state as follows:

### Introduction

1. This affidavit is submitted in support of (1) a criminal complaint charging Sylvia Clara SIMONSEN with violations of federal law, specifically 18 U.S.C. § 1201 (Kidnapping) and (2) an arrest warrant for SIMONSEN.

2. The facts and information set forth in this Affidavit are based upon my personal knowledge obtained during this investigation, information provided to me by other investigators, as well as documents and records obtained through the course of this investigation. This case is being investigated by me and other Special Agents (SAs) of the Federal Bureau of Investigation, with assistance from various state and local law enforcement agencies. The Boy's Town Police Department in Omaha, Nebraska, initiated this case in response to the disappearance of two juveniles, a brother and sister, named herein by their initials as P.O. and C.O., respectively.

3. Because I am submitting this Affidavit for the limited purpose of establishing probable cause for the requested warrant and complaint, I have not included every fact known to me concerning this investigation. Accordingly, contained herein are facts sufficient to establish probable cause to believe that SIMONSEN has violated 18 U.S.C. § 1201 (Kidnapping).

### Affiant's Background

4. I am a Special Agent with the FBI, and have been since August 2008. I am currently assigned to the Redding Resident Agency in Redding, California. While employed by the FBI, I have investigated federal criminal violations related to high technology or cybercrime, financial crime, and violent crime. I have gained experience through training at the FBI Academy in Quantico, Virginia and everyday work relating to conducting these types of investigations. I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. § 1201 (Kidnapping).

## Relevant Facts

5. The United States, including the FBI, is conducting a criminal investigation of SIMONSEN also known as "Michelle Otte," "Michelle Bible," and "Mitch," regarding violations of 18 U.S.C. § 1201.

6. On or about February 14, 2019, a confidential human source (CHS) reported to law enforcement that the CHS knew the location of two missing juveniles, P.O. (a male juvenile) and C.O. (a female juvenile, and sister of P.O.), who had gone missing from their court-ordered residence homes in Omaha, Nebraska, and who were the subject of a search by local police (as explained more fully below). The CHS reported that P.O. and C.O. were residing with SIMONSEN (to whom the CHS referred as "Michelle Otte" or "Mitch"), at 11280 Benson Drive, Shasta, California. According to the CHS, SIMONSEN was calling the missing boy "Joshua" or "JP," and calling the missing girl, "Sarah."

7. As background, on September 10, 2018, Judge David Stucki of the Cuyahoga County Domestic Relations Court of the state of Ohio, ordered that P.O. and C.O. should be placed at Father Flanagan's Boys' Home in Boys Town, Nebraska, for residential treatment. Citing as part of its reasoning the harm the juveniles' parents had inflicted on them over a period of years, Judge Stucki's order prohibited their parents from removing either child from Boys/Girls Town. The order also notes that, at the time it issued, P.O. remained missing and should be returned to Boys Town immediately upon being located. P.O. had gone missing from his placement on May 1, 2018, and C.O. went missing on October 21, 2018. The Court's order also terminated parental rights for both of the juveniles' parents.

8. The Boys Town Police Department opened active investigations concerning the juveniles' disappearances. It is the understanding of the Boys Town Police Department that Boys Town was the custodial caregivers for P.O. and C.O. At the time the California CHS came forward, missing person posters for the juveniles were active on the National Center for Missing and Endangered Children (NCMEC) Web site. Police in Nebraska were able to corroborate independently some of the information the California CHS provided. Based on the corroborated

information, investigators obtained a search warrant for the property located at 11280 Benson Drive, which agents executed on February 15, 2019. At that time, the missing juveniles were not located at the residence, but agents found evidence indicating the children had been in the house, including background information about the missing juveniles, as well as the names "Josh" and "Sarah" on the chore chart posted on the wall. Additionally, evidence seized included receipts for travel to Omaha, Nebraska, from October 2018, the month C.O. went missing.

9. In addition, investigators found in the home invoices addressed to "Michelle Bible," and other documents, that had a specific mobile telephone number written on them (the Target Cell phone). Through an administrative subpoena to Sprint Corp., the provider of mobile telephone services to the Target Cell Phone, investigators discovered that listed subscriber for the Target Cell Phone was "MICHELLE CHAVEZ," and the account was established on May 6, 2017.

10. Included in the evidence collected at 11280 Benson Drive was also a typewritten narrative entitled "AMANDA, EMILY AND BEN by Mich and Connie, summer 2015 through 2017." The narrative describes that on June 3, 1961, SYLVIA CLARA AMANDA SIMONSEN SOLHEIM, referred to as "Amanda" in the narrative, was born in Michigan to Dorothy Bennet Simonsen (this date is the same as SIMONSEN's true date of birth). The narrative describes how "Amanda" was sexually abused in Illuminati ritual ceremonies at the ages of three, six, nine, twelve, and fifteen years old. It relates how Amanda "managed to rescue 158 people in 41 years. Many of the people she rescued were adopted by good families, and have always kept in contact with each other." The narrative continues, "Amanda did a lot of the rescues when she was 11 through 19. She did many of the rescues while she was young and strong. She was pulling people out right and left. She had the opportunity and she just kept going. She had great opportunities because they didn't know who was doing it, who was taking the kids." The narrative describes how "Amanda never cooperated in the rituals. She took much punishment and believed it was worth the pain, since she said this life is not the most important thing." Adding, "It's just a body and I would do it again." According to the narrative, when she had her

biological children, Emily and Ben, she did not stop. Having her own children just gave her more fuel. She said that she heard the "still small voice of God telling her to free the captives, and had big angels around her so she was not afraid." The narrative describes different family members that coincide with true names and dates of SIMONSEN's own family members (such as her daughter, Emily). It is unclear how much of the narrative is fiction versus fact, but the narrative was found in SIMONSEN's bedroom. Agents also found a sweatshirt in SIMONSEN's closet bearing the words, "MOTHERS OF LOST CHILDREN," in large bold font.

11. On March 19, 2019, agents interviewed SIMONSEN's sister, SUE LUNA-SIMONSEN (Sue) who indicated she contacts SIMONSEN on the Target Cell Phone. The Target Cell Phone was listed as "Syl" in the contacts on Sue's mobile phone. Sue told agents that SYVLIA had stayed with Sue recently for approximately one week, and had two juveniles with her whom SIMONSEN introduced as "Joshua" and "Sarah," and who matched the CHS's physical description of the missing juveniles.

12. In text messages to Sue, pre-dating SIMONSEN's arrival at Sue's house, SIMONSEN had indicated to Sue that she (SIMONSEN) would be coming to Sue's house with six people. When SIMONSEN arrived at Sue's house, SIMONSEN was accompanied by her own mother, her adult daughter, Emily Otte, the daughter's adult boyfriend, as well as "Josh" and "Sarah." According to Sue, SIMONSEN and the others with whom she was traveling departed Sue's residence on March 18, 2019 (the day before agents had interviewed Sue).

13. Multiple attempts to locate SIMONSEN and the missing juveniles at 11280 Benson Drive in the following weeks were unsuccessful.

14. Following agents' execution of the search warrant at 11280 Benson Drive, SIMONSEN appeared to have taken the missing juveniles to Arizona. On March 6, 2019, SIMONSEN purchased six dinner tickets, including one child ticket, at the Blazin' M Ranch in Cottonwood, Arizona. SIMONSEN provided the Target Cell Phone as her telephone number at the ranch.

15. Pursuant to search warrant 3:19-SW-0005-DMC, signed on April 19, 2019, in the Eastern

District of California, Sprint Corp. began providing precise location data of Target Cell Phone. On April 29, 2019, precise location data indicated the Target Cell Phone was near Williams, Arizona. The uncertainty of the location data, however, reporting the phone to be within radii of three to 15 miles, made it difficult to pinpoint SIMONSEN's location.

16. On May 1, 2019, at approximately 9:53 p.m. MST, the precise location data provided by Sprint Corp. identified a much smaller radius of a possible location for the Target Cell Phone, just 66 meters, giving GPS coordinates that coincided with a Super 8 Hotel located at 2050 Dome Rock Road W, Quartzsite, Arizona.

17. At approximately 11:00 p.m. MST, FBI SA Donald Ferreira, along with police officers from Quartzsite Police Department, arrived at 2050 Dome Rock Road W, Quartzsite, and began surveillance. During that time, agents observed a vehicle leaving the parking lot. Quartzsite PD stopped the vehicle and identified the driver as a desk clerk from the hotel. Agents showed the clerk photographs of SIMONSEN, P.O., and C.O. The clerk recognized SIMONSEN and P.O. and stated they were currently staying at the hotel.

18. SA Ferreira then interviewed the desk clerk at the hotel who was on shift at that time and showed him the photographs of SYLVIA, P.O., and C.O. The clerk indicated that he recognized P.O. The clerk stated no one had checked in using the name "Sylvia Simonsen," but an individual identified as "Dorothy Simonsen" and the boy had checked into room 127.

19. SA Ferreira and Quartzsite police officers went to room 127. Upon knocking, a female answered the door who was later identified as SIMONSEN. Also in the room was Dorothy Simonsen, P.O., C.O., Emily Otte, and Otte's fiancée. SA Ferreira recognized P.O. and C.O. as the same children depicted in the NCMEC posters who had gone missing from Boys/Girls Town in Omaha, Nebraska. Quartzsite police arrested SIMONSEN for child endangerment.

20. SA Ferreira later interviewed SIMONSEN. SA Ferreira provided SIMONSEN her *Miranda* rights and SIMONSEN agreed to be interviewed without an attorney present. SIMONSEN stated she picked up P.O. about a year ago, after CONNIE VALENTINE (VALENTINE) told SIMONSEN that P.O.'s father had abused him. SIMONSEN stated that

VALENTINE arranged the place at which SIMONSEN would pick up P.O. and SIMONSEN drove from California to Council Bluffs, Iowa to meet P.O. at a Motel 6. SIMONSEN called P.O. "Josh," but knew Josh's real name as P.O. According to SIMONSEN, she took P.O. back to California and had told people that he was VALENTINE'S grandson. SIMONSEN recounted that she later went back to Nebraska to pick up C.O., whom she called Sarah. According to SIMONSEN, at the time she first met C.O., C.O. was wearing a nametag bearing her real name. SIMONSEN located C.O. at Boy's Town and, when she was close enough to her, whispered, "I know your brother." According to SIMONSEN, she then told C.O. that C.O. should follow her out to her car and then SIMONSEN would call her brother "Josh." SIMONSEN then asked C.O. if she wanted to go with her to see her brother, to which C.O. responded that she did.

21.     SIMONSEN also recounted that police had come to SIMONSEN's residence sometime after last Christmas (likely referring to the search warrant the FBI had executed and for which agents had left notice) and SIMONSEN had been on the run since then with both P.O. and C.O. SIMONSEN indicated to agents that she did not consider her actions to be "kidnapping" because she felt that kidnapping involved people taking children in order to harm them. SIMONSEN stated she knew what she did was illegal, but did not consider it harmful.

22.     SA Ferreira also interviewed Emily Otte. Emily indicated that she knew P.O. and C.O. as "Josh" and "Sarah." She said she believed them to be friends of CONNIE VALENTINE who lives in Davis, California. Emily stated she had been driving around for the past month with SIMONSEN and the two juveniles. Emily indicated that she has known "Josh" since he was sixteen and a half years old, but she has only known "Sarah" since just before Christmas. Emily also indicated that SIMONSEN turned up with "Josh" first, and later came home with "Sarah." According to Emily, everyone calls SIMONSEN either "Mitch" or "Michelle."

**Summary**

23. SIMONSEN is not a parent to P.O. and C.O., and the FBI believes she is not a blood or legal relative of any kind to them. Evidence the FBI collected places SIMONSEN in the area of Boy's Town, Nebraska in and around the time C.O. went missing. SIMONSEN admitted to SA Ferreira that she traveled across multiple states to pick up both minors, returned with them to California, and then went on the run across state lines to avoid law enforcement detection, knowing that the FBI was looking for her. SIMONSEN indicated that she seeks to "rescue" children she believes are being abused, but stated she knew her actions were illegal.

### Conclusion

24. Based upon the totality of the facts set forth in this affidavit, there is sufficient probable cause to charge SIMONSEN with violating 18 U.S.C. § 1201 (Kidnapping), and issue a federal warrant for her arrest.

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

_____
Peter A. Jackson, Special Agent
U.S. Federal Bureau of Investigation

Subscribed and sworn to before me on:   5-3-2019

_____
The Honorable Dennis M. Cota
UNITED STATES MAGISTRATE JUDGE

Approved as to form by:

/s/ James R. Conolly
James R. Conolly
ASSISTANT UNITED STATES ATTORNEY